# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| ANTHONY MARKEL CRAIG, JR., | ) |
| Plaintiff, | ) |
| v. | ) Case No.: 2:24-cv-00447-JHE |
| CINDY TYER, et al., | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Anthony Markel Craig, Jr. ("Craig") brings this action *pro se*, alleging claims against Defendants Cindy Tyer ("Tyer") and Peter Crawford ("Crawford") arising out of the closure of his account with nonparty Charles Schwab & Co., Inc. ("Schwab"). (Doc. 1). Defendants have moved to compel Mr. Craig's claims to arbitration and stay this case. (Doc. 14). Mr. Craig has filed a response in opposition to that motion (doc. 16), and Defendants have filed a reply in support (doc. 17). For the reasons discussed further below, Defendants' motion is **GRANTED**.[1]

## I. Legal Standard

Courts in this circuit generally treat a motion to compel arbitration as a motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). *Tracfone Wireless, Inc. v. Simply Wireless, Inc.*, 229 F. Supp. 3d 1284, 1292 (S.D. Fla. 2017). *See*

---

[1] Defendants have also moved to be excused from various discovery obligations. (Doc. 22). Mr. Craig opposes this motion and has moved to proceed with discovery and with "federal civil procedure." (Docs. 24 & 27). As this case is due to be stayed, Defendants' motion is **GRANTED**, and Mr. Craig's motions are **DENIED**. If necessary, any future discovery obligations will be reset by separate order.

*also Wash v. Mac Acquisition of Delaware, LLC*, No. 6:14-CV-1424-ORL-40, 2014 WL 5173504, at *1 (M.D. Fla. Oct. 14, 2014).  A challenge under Rule 12(b)(1) may be either facial or factual:

> Facial attacks on the complaint require the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion. Factual attacks, on the other hand, challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered.

*Garcia v. Copenhaver, Bell & Assocs., M.D.s*, 104 F.3d 1256, 1261 (11th Cir. 1997) (citations omitted).  A motion to compel arbitration is generally treated as a factual attack.  *Owings v. T-Mobile USA, Inc.*, 978 F. Supp. 2d 1215, 1222 (M.D. Fla. 2013).  Thus, the court may consider matters outside the pleadings in support of or opposition to a motion to compel arbitration.  *Chambers v. Groome Transp. of Alabama*, 41 F. Supp. 3d 1327, 1334 (M.D. Ala. 2014).

## II. Background

Mr. Craig's complaint does not include much factual material, but he appears to allege he lost approximately $230,000.00 when Schwab closed his account without authorization.  (Doc. 1 at 4).  On this basis, he asserts various claims against Crawford, who is Schwab's Chief Financial Officer (*see* Declaration of Madison Talley (doc. 14-1, "Talley Decl.") at ¶ 7),[2] and Tyer, another Schwab employee (*id.*).[3]  (*See generally* doc. 1).

Mr. Craig applied for a Schwab account on January 16, 2024.  (Talley Decl. at ¶ 8; doc. 14-2 (the "Application")).  The Application states that by checking the checkbox at the end, the

---

[2] Madison Talley is "a duly authorized custodian of business records of Schwab" with "direct access to the books and records of Schwab."  (Talley Decl. at ¶ 2).

[3] It is not entirely clear why Mr. Craig has sued Crawford or Tyer, given that his claims appear to involve Schwab's actions in closing his account.  There is no allegation in the complaint that Crawford or Tyer specifically did anything with respect to the account.

applicant "agree[s] to the terms of the contract, which includes a mandatory pre-dispute arbitration clause." (Doc. 14-2 at 7). It further states:

> Please read carefully the Schwab One Account Agreement, the Application Agreement, and the Account Agreement Amendment. Together these documents are referred to as the "Account Agreement" and will govern Schwab's brokerage account relationship with you.
>
> By checking the checkbox, you:
>
> - Affirm that you have received and read the Account Agreement and understand that it is a legally binding agreement and the equivalent of a written contract.
>
> [ . . . ]
>
> - Understand that by checking the checkbox and submitting this application, you will be bound to the Account Agreement the same as if you had signed a paper copy with an ink pen.
>
> - Acknowledge that your Account Agreement with Schwab contains a pre-dispute arbitration clause contained in Section 26 of the Schwab One Account Agreement.

(Doc. 14-2 at 7). Consistent with this last bullet point, Section 26 of the Account Agreement contains a lengthy, bolded arbitration provision. (Doc. 14-3 at 40–42). In relevant part, that provision states:

> **Arbitration Agreement. Any controversy or claim arising out of or relating to (i) this Agreement, any other agreement with Schwab, an instruction or authorization provided to Schwab or the breach of any such agreements, instructions, or authorizations; (ii) the Account, any other Schwab account or Services; (iii) transactions in the Account or any other Schwab account; (iv) or in any way arising from the relationship with Schwab, its parent, subsidiaries, affiliates, officers, directors, employees, agents or service providers ("Related Third Parties"), including any controversy over the arbitrability of a dispute, will be settled by arbitration.**

(*Id.* at 41). Mr. Craig electronically signed the Application on January 16, 2024. (Doc. 14-2 at 7).

3

### III. Discussion

The Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, (the "FAA"), evinces "a liberal federal policy favoring arbitration agreements." *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012) (quoting *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.,* 460 U.S. 1, 24 (1983)). Under the FAA, a court confronted with an enforceable arbitration agreement must stay the case and refer the matter to arbitration:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration

9 U.S.C. § 3. The stay is mandatory, precluding the exercise of discretion by a district court. *See Smith v. Spizzirri*, 601 U.S. 472, 478 (2024) ("When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding."); *John B. Goodman Ltd. P'ship v. THF Const., Inc.*, 321 F.3d 1094, 1095 (11th Cir. 2003) ("Under the FAA, 9 U.S.C. § 1 *et seq.*, a district court *must* grant a motion to compel arbitration if it is satisfied that the parties actually agreed to arbitrate the dispute.") (emphasis added).

"Federal law establishes the enforceability of arbitration agreements, while state law governs the interpretation and formation of such agreements." *Employers Ins. of Wausau v. Bright Metal Specialties, Inc.*, 251 F.3d 1316, 1322 (11th Cir. 2001). Defendants cite Alabama law for

the principles governing the interpretation and formation of the arbitration agreement.[4] (*See* doc. 14 at 5–6) (citing *Cooley v. KDVH Enterprises, LLC*, No. 2:21-CV-802-AMM, 2022 WL 980843, at *2 (N.D. Ala. Mar. 30, 2022), in turn citing *Jim Walter Homes, Inc. v. Saxton*, 880 So. 2d 428, 430 (Ala. 2003)).  Under Alabama law, "[a] party seeking to compel arbitration has the burden of proving: (1) the existence of a contract containing an arbitration agreement and (2) that the underlying contract evidences a transaction affecting interstate commerce." *Jim Walter Homes*, 880 So. 2d at 430.  "Once those two items have been shown, the burden shifts to the opposing party to present evidence either that the arbitration agreement is not valid or that it does not apply to the dispute in question." *Id.*

Here, as set out above, Defendants have produced a contract between Mr. Craig and Schwab containing an arbitration provision.  (*See* doc. 14-2 at 7; doc. 14-3 at 40–42).  Furthermore, because the Agreement relates to a securities account, it involves interstate commerce. *See, e.g., Hager v. Willis,* No. CV 20–00248-KD-B, 2020 WL 6107590, at *5 (S.D. Ala. Oct. 14, 2020) (collecting cases for the proposition that "[c]ontracts for the management of securities and investments implicate interstate commerce."); *LeFoy v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. CIV.A. CV89PT0296E, 1989 WL 80444, at *1 (N.D. Ala. Apr. 14, 1989) (quoting *Ex Parte: Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 494 So. 2d 1, 2 n.1 (Ala. 1986)) (observing that "the Alabama Supreme Court has expressly recognized that" a brokerage's customer

---

[4] The Account Agreement specifies that it is "governed by the law (but not the choice of law doctrines) of the state of California . . . except that the section entitled 'Arbitration' shall be governed by the Federal Arbitration Act." (Doc. 14-3 at 40).  Mr. Craig does not appear to dispute Defendants' assertion that Alabama law controls as to the interpretation and formation of the agreement.  (*See* doc. 16). Since neither party has asked the undersigned to apply any other state's law, the undersigned assumes the parties agree that Alabama law applies.

agreement "is a contract evidencing a transaction involving interstate commerce"); *Johannsen v. Morgan Stanley Credit Corp.*, No. 2:11-CV-01516-MCE, 2012 WL 90408, at *3 (E.D. Cal. Jan. 11, 2012) (citing *Austin Municipal Secur., Inc. v. NASD,* 757 F. 2d 676, 697 (5th Cir. 1985)) ("Where agreements to arbitrate are found in written agreements pertaining to securities accounts . . . such agreements are *per se* evidence of transactions in interstate commerce and are accordingly subject to the Federal Arbitration Act . . . ."). Therefore, the only remaining question is whether Mr. Craig has established either that the arbitration agreement is invalid or that it does not apply to his claims.

Mr. Craig offers two arguments in opposition to the motion to compel, both contending that the arbitration agreement is invalid.[5] Neither is availing. First, Mr. Craig states that he has

---

[5] Mr. Craig does not challenge the existence of the contract itself. (*See generally* doc. 16). Under Alabama law, the elements of a contract are "offer, acceptance, consideration, and mutual assent to the terms essential to" its formation. *Williams v. General Electric*, 13 F. Supp. 3d 1176, 1181 (N.D. Ala. 2014) (citing *S. Energy Homes, Inc. v. Hennis*, 776 So.2d 105, 108 (Ala. 2000)). There appears to be no dispute that all these elements were met when Mr. Craig electronically signed the Application and opened his account. (*See* Talley Decl. at ¶ 7).

Mr. Craig also does not argue that his claims are outside the scope of the arbitration agreement. The arbitration agreement contains expansive language, covering "[a]ny controversy or claim arising out of or relating to (i) this Agreement, any other agreement with Schwab, an instruction or authorization provided to Schwab or the breach of any such agreements, instructions, or authorizations; (ii) the Account, any other Schwab account or Services; (iii) transactions in the Account or any other Schwab account; (iv) or in any way arising from the relationship with Schwab, its parent, subsidiaries, affiliates, officers, directors, employees, agents or service providers." (Doc. 14-3 at 41). Courts generally find that broad language like this sweeps most disputes within its scope. *See, e.g., Moses H. Cone*, 460 U.S. at 5 ("[a]ll claims, disputes and other matters in question arising out of, or relating to, this Contract"); *Bailey v. Diversified Consultants Inc.*, 444 F. Supp. 3d 1330, 1335 (N.D. Ala. 2020) ("any controversy arising out of or relating to [the Customer Agreement]"). Here, this language clearly covers Mr. Craig's claim that Schwab wrongfully closed his brokerage account. And although neither Tyer nor Crawford is a party to the arbitration agreement, Mr. Craig's dispute with them "aris[es] from the relationship with Schwab" and its "officers [or] employees," and the agreement "inure[s] to the benefit of the parties hereto and their respective representatives . . . ." (Doc. 14-3 at 41).

"sent the defendant[s] several letters waiving the arbitration agreement." (Doc. 16 at 1).  Mr. Craig has not provided any evidence to support that he sent these letters or disclosed anything about their content.  (*See generally* doc. 16).  "'[C]onclusory allegations without specific supporting facts have no probative value for a party' opposing a motion to compel arbitration." *Bester v. Compass Bank*, No. 2:18-CV-01817-AKK, 2019 WL 1897176, at *1 (N.D. Ala. Apr. 29, 2019) (quoting *Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325, 1333 (11th Cir. 2016)) (some internal quotation marks omitted).  But even if Mr. Craig had provided the letters, they would not support that the arbitration agreement is invalid or inapplicable.  Under Alabama law, a party "cannot unilaterally alter the terms of a contract after the contract has been made." *See Samuels & Assocs., Inc. v. Boxcar Foods, USA, Inc.*, 286 F. App'x 708, 714 n.8 (11th Cir. 2008) (quoting *Ex parte Amoco Fabrics & Fibers Co.,* 729 So. 2d 336, 340 (Ala. 1998).  Rather, "[b]oth parties must mutually assent to a modification." *Id.* (quoting *Amoco,* 729 So. 2d at 340).  Since there is no evidence that Schwab assented to Mr. Craig's purported waiver of the arbitration agreement, the agreement cannot be invalidated on that basis.

Second, Mr. Craig appears to argue that *all* arbitration agreements are invalid based on legislation passed by the United States Congress in 2017.  (*See* doc. 16 at 1).  Specifically, Mr. Craig points to House Joint Resolution 111, which the House and Senate passed pursuant to the Congressional Review Act ("CRA").  (*Id.*).  That joint resolution became Public Law 115-74 on November 1, 2017.  *See* ARBITRATION AGREEMENTS, PL 115-74, November 1, 2017, 131 Stat 1243.  But Mr. Craig overstates the breadth of that legislation.  As background, the Consumer Financial Protection Bureau ("CFPB") issued a regulation restricting financial institutions' ability to use mandatory arbitration clauses to block consumers from participating in class action lawsuits. *See* 82 Fed. Reg. 55500-01 (November 22, 2017); 82 Fed. Reg. 33210 (July 19, 2017).  Public

7

Law 115-74 utilized Congress' power under the CRA to bar enforcement of this rule.[6]  *See* 82 Fed. Reg. 55500-01.  But the original CFPB rule did not apply to securities broker-dealers like Schwab in the first place, *see* 82 Fed. Reg. at 33348, and Congress's actions under the CRA invalidated *restrictions* on arbitration agreements rather than invalidating the agreements themselves.  In any event, this is not a class action, so neither the original rule nor Congress's actions pursuant to the CRA have any effect on the agreement here.

Defendants have provided an arbitration agreement involving interstate commerce, and Mr. Craig has not shown that the agreement is invalid or that his claims fall outside its scope.  Therefore, Mr. Craig must pursue his claims against Defendants in arbitration.

## IV. Conclusion

For the foregoing reasons, Defendants' motion to compel arbitration (doc. 14) is **GRANTED**.  This case is **STAYED** during the pendency of arbitration proceedings.  The parties are **ORDERED** to file a joint status report concerning the progress of arbitration by **February 10, 2025**.  Additional joint status reports are due **every 60 days thereafter**.

DONE this 10th day of December, 2024.

	**JOHN H. ENGLAND, III**
	UNITED STATES MAGISTRATE JUDGE

---

[6] The Congressional Review Act "authorizes [Congress] to disapprove an agency rule by simple majority in both Houses within 60 legislative days after the agency submits the rule." *PHH Corp. v. Consumer Fin. Prot. Bureau*, 881 F.3d 75, 160 n.16 (D.C. Cir. 2018), *abrogated on other grounds by Seila L. LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 140 S. Ct. 2183, 207 L. Ed. 2d 494 (2020) (Henderson, J., dissenting).